IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| JOSEPH GOODEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 2:05-CV-46-WCO |
| | : | |
| PAT CARSON and FORSYTH | : | |
| COUNTY, a Political Subdivision of | : | |
| the State of Georgia, | : | |
| | : | |
| Defendants. | : | |

## ORDER

The captioned case is before the court for consideration of defendants'
motion for summary judgment [23-1].

### I.      Factual Background and Procedural History

Plaintiff was employed by defendant Forsyth County as an inspector in
the water and sewer department. (Compl. ¶ 7.) Based upon anonymous
communication directed to defendant Pat Carson, director of human resources
for Forsyth County, and information provided by the county Sheriff's
Department, defendants asked plaintiff to submit to a drug test in November
2004. (Id. ¶¶ 11, 15; Defs.' Statement of Material Facts ¶ 1.) Plaintiff executed a
form entitled "Drug Test Consent and Information Release Form," which stated:

> I authorize the testing laboratory and/or the Forsyth County Sheriff's Department to release the results of these drug and alcohol tests only to the Medical Review Officer or designee employed by the County for such purpose, the Forsyth County Department of Human Resources representative, and the Department Head for whom I am/will be employed, those Forsyth County employees who have a valid reason to know, or those involved in any appeal process, should it become necessary, I understand that this information will otherwise be kept confidential and will not be released without my written consent or as is otherwise permitted by law.  I release the Forsyth County Sheriff's Department, the Forsyth County Department of Human Resources, the medical review personnel, the testing laboratory, and any and all of their employees/owners or representatives from any and all liability arising from the release or use of the information derived from or contained in my test results.

(Pl.'s Dep., Ex. 2.) The drug test was then administered. (Defs.' Statement of Material Facts ¶ 2.) The results of the test were positive for amphetamines. (Compl. ¶ 18.)

Plaintiff has testified that he revealed the results of the test to several people, including co-workers, friends, and family members. (Defs.' Statement of Material Facts ¶¶ 7-8, 10, 15, 17, 21, 25, 27.) Plaintiff admits that he did not instruct all of these people to keep the information confidential. (Id. ¶¶ 12, 14, 16, 21.)  Plaintiff also admits that he was aware that the results of his drug test became widely known among his co-workers. (Id. ¶ 29.)

On December 7, 2004, plaintiff was terminated because of his drug test results. (Compl. ¶ 30; Defs.' Statement of Material Facts ¶ 30.) Plaintiff

subsequently appealed his termination to the Forsyth County Civil Service Board. (Compl. ¶ 31.)  In February 2005, the Civil Service Board held a hearing on plaintiff's appeal.  (Id. ¶ 32.)  The hearing was closed to the public at plaintiff's request.  (Id. ¶ 33; Defs.' Statement of Material Facts ¶ 32.)  On March 1, 2005, the Civil Service Board issued a ruling upholding plaintiff's termination. (Compl. ¶ 38; Defs.' Statement of Material Facts ¶ 31.)

In May 2005, defendants received requests made pursuant to the Open Records Act from David Milum, a self-proclaimed political activist in Forsyth County, and from Todd Truelove, a reporter for the Forsyth County News. (Defs.' Statement of Material Facts. ¶ 33.)  In response to these requests, defendants released the responsive materials.  (Id.)  These materials included a Separation Notice informing plaintiff that the personnel action was taken due to his drug test results and audiotapes of plaintiff's termination appeal before the Civil Service Board. (Id. ¶¶ 35, 40.)

Plaintiff filed this lawsuit against defendants on April 1, 2005 [1-1]. Plaintiff asserts that defendants have violated federal law by disclosing to third parties the results of plaintiff's drug test and other personnel information that plaintiff claims were private.  (Compl. ¶¶ 27, 57.)  Plaintiff also alleges that defendants disclosed the "contents" of the Civil Service Board appeal hearing

to the public.  (Id. ¶ 41.)  Plaintiff asserts that, as a result of defendants'

disclosures, several news articles were published containing information

regarding plaintiff's use of illegal drugs and the fact that he failed his drug test.

(Id. ¶ 28.)  Plaintiff alleges that defendants have violated his due process rights

under the United States Constitution.  Plaintiff claims that defendants have

deprived him of his property by refusing to pay him for the vacation and "comp

time" that he had earned.  (Id. ¶ 44.)  Plaintiff also asserts a claim under state

law for invasion of his privacy.  Defendants now move for summary judgment

on all claims, and plaintiff has filed a response.[1]

## II.   Summary Judgment Standard

Summary judgment shall be granted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Only those claims for which there is no need for a factual determination and for

---

[1] Plaintiff's response was not timely filed.  Although the court granted plaintiff an extension until March 6, 2006 to file his response to defendants' motion for summary judgment, plaintiff did not file his response until March 7, 2006.  Despite its untimeliness, the court will consider plaintiff's response. However, plaintiff and plaintiff's counsel are on notice that the court requires strict compliance with deadlines.

which there is a clear legal basis are properly disposed of through summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant.  See, e.g., Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  It is important to recognize, however, that this principle does not require the parties to concur on every factual point.  Rule 56 "[b]y its very terms . . . provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party.  The nonmoving party still bears the burden of coming forth with sufficient evidence.  See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).  However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence.  Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide."  Mize v. Jefferson City Bd. of Educ., 93

F.3d 739, 742 (11th Cir. 1996).  On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" Id. at 743.  Adopting language from one of its sister circuits, the Eleventh Circuit stated:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party.  The nonmoving party's evidence must be taken as true.  Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law.  This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

Id. (citation omitted).  "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." Id.

## IV.   Motion for Summary Judgment

Plaintiff alleges that defendants' actions in releasing his information violated his "constitutional rights to due process pursuant to the Fourth and Fourteenth Amendments."  (Compl. ¶ 47.)  Plaintiff also asserts that his claims "sound in defamation, breach of confidentiality, and deprivation of property." (Pl.'s Resp. at 12.)  Plaintiff claims that defendants have violated both federal and state law in releasing his information.  Thus, plaintiff seems to raise several

causes of action: (1) a procedural due process claim; (2) a "stigma-plus" defamation claim; (3) a substantive due process invasion of privacy claim; and (4) a state law invasion of privacy claim.[2]  Defendants move for summary judgment on all claims.

### A.    Section 1983 Claims

Several of plaintiff's claims against defendants arise under 42 U.S.C. § 1983.  Section 1983 provides judicial remedies to a plaintiff who can show that a person acting under color of state law committed an act that deprived the plaintiff of some right, privilege, or immunity protected by federal law.  42 U.S.C. § 1983.  Here, plaintiff alleges that defendants violated his Fourth and Fourteenth Amendment rights. [Compl. ¶¶ 47, 52-53.] With respect to these claims, defendant Carson asserts that she is entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary acts from liability under § 1983 if their acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Jackson v. Sauls, 206 F.3d 1156, 1164 (11th Cir. 2000)

_____

[2] Count I of the complaint also states that plaintiff "has been deprived of . . . equal protection." [Compl. ¶ 52.] Plaintiff, however, fails to state any facts that would support this claim.  Plaintiff makes no allegations that others who were similarly situated were treated differently.  Plaintiff has therefore abandoned this claim.

(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, thus protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law."  <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987); <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001)).  Therefore, qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001).  Because qualified immunity is a defense not only from liability but also from suit, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible."  <u>Lee</u>, 284 F.3d at 1194 (quoting <u>GJR Invs., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1370 (11th Cir. 1998)).

In analyzing a claim of qualified immunity, the court must first consider whether the public official "was acting in the scope of [her] discretionary authority when the allegedly wrongful acts occurred."  <u>Lee</u>, 284 F.3d at 1194.  In this case, there has been no dispute that when Carson released the information in response to the Open Records Act requests, she did so as part of her

discretionary function and within her authority as human resources director for Forsyth County.

Having established that Carson was acting within her discretionary authority, the burden shifts to plaintiff to establish that qualified immunity is not appropriate. <u>Id.</u> The Supreme Court has set forth a two-part test for evaluating a claim of qualified immunity. <u>See</u> <u>Saucier</u>, 533 U.S. at 201. As a "threshold question," the court must ask whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [government official's] conduct violated a constitutional right." <u>Id.</u> If a constitutional violation can be established on the plaintiff's facts, the court must then determine "whether, at the time of the incident, every objectively reasonable [human resources director] would have realized the acts violated already clearly established federal law." <u>Garrett v. Athens-Clarke County</u>, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing <u>Saucier</u>, 533 U.S. at 201-02).

Accordingly, the court will first evaluate the merits of plaintiff's federal claims against Carson. To the extent that these claims could otherwise survive summary judgment, the court will consider whether Carson violated any rights that were clearly established.

### 1.        Procedural Due Process Claim

Plaintiff asserts that his suspension and termination did not comply with County policies.  Plaintiff also asserts that defendants have refused to pay him vacation and "comp time" that he had accumulated at the time of his termination.  Plaintiff, however, has failed to show that these alleged policy violations deprived him of procedural due process.  Furthermore, plaintiff was given a hearing to appeal his termination before the Civil Service Board within three months of the termination.  Thus, plaintiff has received procedural due process with regard to the termination of his employment with defendant Forsyth County.  See McKinney, 20 F.3d at 1554-55 (procedural due process claim fails where right involved is merely a property right and state has provided adequate procedures for its protection).

With regard to plaintiff's claim that he has been denied payment for accrued vacation and "comp time," plaintiff does not claim any entitlement to this alleged time under either state law or contract.  It is well-established that an individual cannot assert a property interest in a benefit without a "legitimate claim of entitlement to it."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Property interests are created and defined by independent sources such as state law.  Id.  Plaintiff's bare allegation that he is entitled to

payment for this time is insufficient to show that plaintiff had a constitutionally protected property interest.  Furthermore, plaintiff has failed to submit evidence showing that he had actually accumulated this alleged time.[3]  Thus, the court concludes that plaintiff has failed to establish a claim for denial of procedural due process.

### 2.    "Stigma-Plus" Defamation Claim

Plaintiff has alleged a violation of his liberty interests under the Due Process Clause based on defendant Carson's alleged release of his "medical and drug testing information."   The Supreme Court has held that injury to reputation, by itself, does not constitute a deprivation of a liberty or property interest protected under the Fourteenth Amendment.  Paul v. Davis, 424 U.S. 693, 701-02 (1976).  To invoke the procedural protections of the Due Process Clause, a plaintiff must establish "the fact of the defamation 'plus' the violation of some more tangible interest."   Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing Paul, 424 U.S. at 701-02).  Under this so-called "stigma-plus test," the court must determine whether the right alleged by

---

[3] The only evidence submitted by plaintiff in support of this claim for payment of accrued time is a letter from defendants stating why plaintiff is not entitled to such payment.  (See Pl.'s Resp., Ex. 10.)

plaintiff has been previously recognized and protected under state law. <u>Behrens</u> <u>v. Regier</u>, 422 F.3d 1255, 1260-61 (11th Cir. 2005).

Plaintiff claims that his Due Process Clause claims "sound in defamation, breach of confidentiality, and deprivation of property." (Pl.'s Resp. at 12.) Plaintiff alleges that he has been deprived of a protected liberty interest because defendants' "stigmatizing state action" has caused him to suffer damages. (<u>Id.</u> at 14.) Plaintiff alleges that defendants have interfered with his ability to work and to continue his career.[4] (<u>Id.</u>) Plaintiff makes a broad claim that defendants have interfered with his "right to earn a living." (<u>Id.</u> at 15.)

The court finds that plaintiff has failed to establish a claim for violation of procedural due process. First, plaintiff has failed to establish the fact of the defamation. Under Georgia law, truth is a defense to defamation. O.C.G.A. § 51-5-6; <u>see also</u>, <u>Nelson v. Glenn-Brunswick Hosp. Auth.</u>, 571 S.E.2d 557 (Ga. Ct. App. 2002) (disclosure of plaintiff's Hepatitis C diagnosis was not defamatory as plaintiff had, in fact, tested positive). The record in this case shows that plaintiff's drug test was positive for amphetamines. Plaintiff himself admits this fact. (Compl. ¶ 18.) Thus, a claim by plaintiff for defamation based on

---

[4] The alleged defamation was not uttered incident to plaintiff's termination as the public disclosure of his information was made several months later.

defendants' alleged statement that he had tested positive for controlled substances must fail.[5]

The court also finds that, even if plaintiff could establish that defendants' release of his drug test results was defamatory, he has failed to assert an injury of constitutional magnitude. The only evidence submitted by plaintiff in support of the "plus" requirement for his procedural due process claim is a letter from the Forsyth County Purchasing Department requesting that plaintiff's employer remove him from a project for the county and not assign him to work on any future projects for the county. (See Id., Ex. 11.) Plaintiff has presented no evidence to support his broad claim that he has been denied the "right to earn a living." In fact, rather than alleging that he has been foreclosed from obtaining other employment opportunities, plaintiff readily admits that he was able to find other work. The evidence, therefore, demonstrates that the only injury suffered by plaintiff is his inability to work on projects for which his new

---

[5] Plaintiff also seems to assert that defendants' release of the Civil Service Board ruling constituted defamation as he claims that "the ruling contained false and misleading statements that were intended to harm [him] in his chosen profession." (Compl. ¶ 39.) The court's November 18, 2005 protective order, however, precludes plaintiff from relitigating the issues addressed in that hearing, including the validity of his drug test results and the justification of his termination. Thus, the court will not address these matters here.

employer had been retained as a contractor for defendant Forsyth County.[6] Plaintiff has failed to point to any provision of Georgia law that guarantees a person the right to work on government projects. Plaintiff cannot establish that, under Georgia law, he has a general claim of entitlement to work on county jobs. Thus, plaintiff has failed to establish a claim for "stigma plus" defamation.

### 3. Substantive Due Process Invasion of Privacy Claim

The substantive component of the Due Process Clause protects fundamental rights and liberties. Washington v. Glucksberg, 521 U.S. 702, 721 (1997). The Supreme Court has recognized a right to privacy implicit in the guarantee of due process that includes a citizen's interest in the nondisclosure of private information. Whalen v. Roe, 429 U.S. 589, 599-600 (1977). Nevertheless, the right to privacy is not absolute. See, e.g., Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 457-459 (1977). When determining whether information is of such a personal nature that it is deserving of constitutional

---

[6] Furthermore, plaintiff fails to demonstrate that defendants' alleged defamation of plaintiff caused him to lose even these particular employment opportunities. The letter from defendants to plaintiff's new employer did not contain any stigmatizing statements that could amount to defamation, nor did it disclose any private information concerning plaintiff. The letter did not mention plaintiff's termination or his drug test results. Rather, the letter was merely a request from defendant Forsyth County that a former employee not be placed on any projects on which his new employer was retained as a contractor for the county.

protection, the Eleventh Circuit has engaged in a balancing test.  See Jones v. City of Douglas, Ga., 941 F.2d 1539 (11th Cir. 1991).  Under this test, the court must weigh the state's interest in disclosure with the threat to the individual's privacy interest.  Id. at 1544.

Defendants assert that their interest in complying with the law, namely the Georgia Open Records Act, O.C.G.A. §§ 50-18-70 et seq., outweighs plaintiff's privacy interest.  Plaintiff, however, claims he had an absolute right of privacy as disclosure of his medical information is prohibited under federal and state law as well as county policy.  The court first notes that plaintiff's claim of privacy in his medical records is not relevant in this action.  Although plaintiff claims that defendants disclosed to the public plaintiff's "medical and drug testing information," the evidence establishes that defendants disclosed only the results of plaintiff's drug test, i.e., that he tested positive; the Separation Notice stating that plaintiff had been terminated based on the drug test results; and audiotapes of plaintiff's appeal hearing before the Civil Service Board. There is no evidence in the record that defendants released any medical records. In fact, the evidence shows that defendants released only the results of the drug test and not any lab reports, doctor's notes, or anything else that could be considered "medical records."   The court must now determine whether

defendants' interest is legitimate and whether it outweighs the threat to plaintiff's privacy interest. <u>Jones</u>, 941 F.2d at 1544.

The Georgia Open Records Act provides for public access to information considered "public record." The Act, however, creates certain exceptions, including exceptions for records that are specifically required by the federal government to be kept confidential and for medical records and similar files, the disclosure of which would be an invasion of personal privacy. O.C.G.A. § 50-18-72(a)(1)-(2). The Act also creates an exception for records of material obtained in an investigation related to the suspension, firing, or complaints against public officers or employees until ten days after such records have been presented to the agency or an officer for action or the investigation is otherwise concluded or terminated. <u>Id.</u> § 50-18-72(a)(3).

The information disclosed by defendants does not fit within these exceptions. Plaintiff claims that the disclosure of his medical information is prohibited under federal statutes, including the Health Insurance Portability and Accountability Act ("HIPAA"). The court has already stated, however, that there is no evidence that defendants released plaintiff's medical information. Georgia law has not created a "blanket" exclusion for personnel records. <u>Hackworth v. Bd. of Educ. for the City of Atlanta</u>, 447 S.E.2d 78, 82 (Ga. Ct. App.

1994). Furthermore, plaintiff has failed to submit any evidence that any records obtained in an investigation of plaintiff related to his suspension or termination were released to the public prior to the conclusion of the investigation. Also, Georgia law clearly states that the unauthorized disclosure of drug test results does not result in a state law claim for invasion of privacy. Foster v. Swinney, 588 S.E.2d 307 (Ga. Ct. App. 2004).

As the evidence shows that the information and records released by defendants did not fall within any of the exceptions under O.C.G.A. § 50-18-72, defendants were required to make these public records available to the public upon request under the Georgia Open Records Act. See O.C.G.A. § 50-18-70(a)-(b). Moreover, the Georgia Open Meetings Act requires that the presentation of evidence in proceedings involving disciplinary action against a public employee be open to the public. O.C.G.A. § 50-14-3(6). Thus, despite plaintiff's request for a closed hearing, the proceedings were still a matter of public interest, and defendants' release of the audiotapes was in compliance with the law. Information concerning unlawful activity by a government employee is a matter of legitimate public interest. Furthermore, disclosure of this information was done in the least intrusive manner possible as defendants released only the results of the drug test and not any actual medical records.

17

In balancing plaintiff's privacy interests with defendants' obligations to comply with the Georgia Open Records Act and its goal of fostering confidence in government through openness to the public, the court finds that plaintiff has failed to establish a constitutional injury with regard to the release of his drug test results and other information relating to his termination. The court finds that plaintiff did not have a legitimate expectation of privacy in his drug test results because they were not medical records and because they implied criminal activity. See Carrelli v. Ginsburg, 956 F.2d 598 (3d Cir. 1992) (no constitutional right to privacy in results of drug test); Hedges v. Musco, 33 F. Supp.2d 369, 381 (D.N.J. 1999), aff'd on other grounds, 204 F.3d 109 (3d Cir. 2000). The court further finds that plaintiff's own disclosure of the fact that his drug test was positive shows that he cannot establish that he had a legitimate expectation of privacy in this information. Cummings v. Walsh Constr. Co., 561 F. Supp. 872, 885 (S.D. Ga. 1983) (plaintiff waived her right to privacy by communicating the events herself to third parties).

The court concludes that defendants' disclosure did not violate plaintiff's right to privacy. Plaintiff therefore has no claim for breach of his right to privacy under the Fourteenth Amendment Due Process Clause.

The court therefore concludes that plaintiff has failed to establish any constitutional violation.  Thus, defendants are entitled to summary judgment on plaintiff's § 1983 claims.  Furthermore, defendant Carson is entitled to qualified immunity from liability under § 1983.

### 4.    Clearly Established Rights

Although the court has determined that qualified immunity is appropriate based on the first prong of the qualified immunity analysis, it will proceed to discuss the second prong.  The second part of the qualified immunity analysis requires a determination that the constitutional or statutory right that was violated was clearly established.  Such rights are "clearly established" for qualified immunity purposes if the controlling case law has "earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that [the conduct at issue] violates federal law."  Lassiter v. Ala. A&M Univ. Bd. of Trs., 28 F.3d 1146, 1149 (11th Cir. 1994).

The court finds that even if plaintiff were able to establish that Carson's actions violated plaintiff's constitutional rights, such rights are not clearly established.  Plaintiff fails to cite any authority that would put Carson on notice that her actions violated his constitutional rights.  Although plaintiff claims that

his right to privacy was clearly established, he fails to point to any case law that would demonstrate that her disclosure of his drug test results and other information relating to his termination violated his constitutional rights.  The lack of precedent providing "real notice of practical value [to Carson], considering the special circumstances" of this case rather than mere "talk of some generalized, intellectual concept" is fatal to plaintiff's claim that Carson has violated his clearly established constitutional rights.  Pace v. Capobianco, 283 F.3d 1275, 1282 (2002).  As plaintiff cannot allege that defendant Carson's actions violated any clearly established constitutional right, plaintiff has not met his burden of showing that qualified immunity is not appropriate.  Defendant Carson, therefore, is entitled to qualified immunity.

Based on the court's conclusion that there were no constitutional violations, defendants' motion for summary judgment is **GRANTED** with regard to Counts I and II of plaintiff's complaint.

### B.    State Law Claim

As the court's ruling disposes of all of plaintiff's claims under federal law, the only remaining claim is a state law claim for invasion of privacy.  The court declines to accept supplemental jurisdiction over this claim.  See 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction when it has

dismissed all claims over which it had original jurisdiction).  Accordingly, Count III is **DISMISSED**.

###    V.    Conclusion

Based on the foregoing, defendants' motion for summary judgment [23-1] is hereby **GRANTED** for Counts I and II.  Count III is hereby **DISMISSED**.

IT IS SO ORDERED, this 26th day of April, 2006.

s/ *William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge

21